O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GLORIA ASHBY, | Case No. EDCV 08-00655-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Gloria Ashby seeks judicial review of the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff was born on February 9, 1952. She has a high school education. (Administrative Record ("AR") 97, 120.) Plaintiff's work history includes employment as a registration clerk, office manager, and

purchasing assistant/office helper. (AR 113.) Plaintiff has not been gainfully employed since April 22, 2004, the alleged onset date of disability. (AR 13.) Plaintiff claims to be disabled due to Hashimoto thyroiditis, heart problems, forgetfulness, body aches, medication sensitivity, hair loss. She was also diagnosed with and treated for breast cancer, and she has been diagnosed as obese.

Plaintiff filed applications for SSDI and SSI benefits on September 21, 2005. (AR 11.) The Commissioner denied Plaintiff's application initially on November 16, 2005, and again upon reconsideration, on February 23, 2006. (*Id.*) Administrative Law Judge ("ALJ") Thomas J. Gaye held a hearing October 5, 2007, at which Plaintiff testified and was represented by counsel. A vocational expert also testified.

The ALJ denied Plaintiff's applications on December 14, 2007. (AR 16.) The ALJ applied the five-step sequential analysis mandated by the Social Security Regulations[1] in reaching his decision. The ALJ found that Plaintiff has several severe impairments, stating that she "is status post radioiodine ablation for Graves Disease (4/05), has hypothyroidism, is status post left breast cancer surgery (3/07), chemotherapy and radiation, has anxiety and depression." (AR 13.) After determining that Plaintiff's severe impairments did not meet or equal any listed impairment, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with no climbing of ladders,

---

[1] The ALJ must consider the following questions in evaluating a claimant's disability: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to extreme heat or cold or hazards. (AR 14.) Additionally, the ALJ found that Plaintiff had a mental residual functional capacity of moderate limitations in understanding and remembering detailed instructions and moderate limitations in carrying out detailed instructions. (*Id.*) The ALJ concluded that Plaintiff could return to her past relevant work as an office helper and was not disabled as defined by the Social Security Act at any time through the date of the decision. (AR 19.)

The Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 25, 2008. (AR 4.) Plaintiff then filed this action on May 20, 2008. Plaintiff alleges that the ALJ erred by: (1) failing to properly consider Plaintiff's obesity and its impact on her other impairments; (2) failing to properly consider the actual physical and mental demands of Plaintiff's past relevant work; (3) failing to pose a complete hypothetical to the vocational expert; and (4) failing to properly consider the lay witness testimony. (Joint Stip. 2-3.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. 22.)

**II.  Standard of Review**

The Court must uphold the Social Security Administrations's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence

that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Analysis**

    **A.   Whether the ALJ Properly Considered Plaintiff's Obesity and Its Impact on Her Impairments**

Plaintiff contends that the ALJ erred by failing to consider the impact of Plaintiff's obesity at each level of the five-step analysis. Specifically, Plaintiff contends that the ALJ did not consider whether Plaintiff's obesity was a severe impairment at step two, he did not determine whether Plaintiff's obesity and other impairments combined to meet a listed impairment at step three, and he did not incorporate Plaintiff's limitations stemming from obesity into the RFC determination. Plaintiff's arguments are without merit.

Obesity is a severe impairment at step two "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1P, 2000 WL 628049, at *4 (S.S.A. Sept. 12, 2002). As discussed above, the ALJ concluded Plaintiff had several severe impairments, stating that she "is status

post radioiodine ablation for Graves Disease (4/05), has hypothyroidism, is status post left breast cancer surgery (3/07), chemotherapy and radiation, has anxiety and depression." (AR 13.) The ALJ did not find that Plaintiff's obesity was severe.

Contrary to Plaintiff's contention that the ALJ "totally failed to consider plaintiff's obesity in his decision," (Joint Stip. 6), the ALJ did consider Plaintiff's obesity, and he concluded that it did not have a significant impact on her physical abilities or functioning. (AR 18.) The ALJ stated, "Claimant gained 20 pounds during this period and is obese, but [her roommate's] report indicates claimant is fully functional in terms of her physical abilities." (AR 18.) The ALJ noted that Plaintiff provided in-home health care for her roommate, and that she "has been able to keep track of both her medications and [the roommate's]...,[s]he can drive, keep medical appointments, cook, perform all household chores and otherwise provide ongoing care for herself and her roommate." (*Id.*)

In making her argument, Plaintiff relies on *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003). In that case, the Ninth Circuit reversed the Commissioner's finding of nondisability because the ALJ failed to consider to what extent the plaintiff's obesity negatively impacted her other impairments, her ability to work, and her general health. *Id.* at 1182. The court concluded that the ALJ should have considered the plaintiff's obesity, even though the plaintiff herself did not raise the issue, for several reasons:

> First, it [the obesity] was raised implicitly in Celaya's
> report of symptoms. Second, it was clear from the record that

>Celaya's obesity was at least close to the listing criterion,[2] and was a condition that could exacerbate her reported illnesses. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on record should have alerted him to the need to develop the record in respect to her obesity.

*Id.* The court noted that the ALJ did not consider the plaintiff's obesity even implicitly in evaluating her impairments, and that an ALJ has a heightened duty to develop the record when the claimant is not represented by counsel. *Id.*

In a more recent case, *Burch v. Barnhart*, the Ninth Circuit distinguished *Celaya* where the record did not demonstrate that the plaintiff's obesity exacerbated her other impairments and because she was represented by counsel. 400 F.3d 676, 682 (9th Cir. 2005). The court, quoting the district court's opinion, explained,

>There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.

*Id.* at 683. The court concluded that the ALJ had not erred by failing to consider the impact of the plaintiff's obesity on her impairments or general functioning.

---

[2] At one point, obesity was a listed impairment. However, it was removed as a listed impairment in 1999.

The present case more closely resembles *Burch* than *Celaya*. As in *Burch*, although Plaintiff's physicians noted her weight in treatment notes, it does not appear that any physician indicated Plaintiff's obesity either caused or exacerbated her impairments, or resulted in any functional limitations whatsoever. Plaintiff has identified no medical records that the ALJ might have overlooked stating otherwise. Additionally, Plaintiff did not raise her obesity as an impairment or limitation in her application for benefits or in her hearing testimony, focusing entirely on her other impairments. She had an attorney at the hearing, and neither of them offered any evidence or explanation to show how Plaintiff's obesity limited her ability to function. Even now, Plaintiff has failed to identify any concrete limitations, stating only that obesity's effect on the cardiovascular and respiratory systems in general "explain why ... Plaintiff is frequently fatigued and in pain." (Joint Stip. 4.) Plaintiff has identified no physician who opined that obesity caused her fatigue or pain. She simply argues that obesity is hard on a person's body, and it might have had some impact on hers, without referencing any support in the record that such was actually the case.

After describing in detail Plaintiff's medical record and the various physicians' opinions, along with the statement Plaintiff's roommate submitted in support of her application, the ALJ determined that Plaintiff's obesity had no significant impact on her ability to work. It is clear from the ALJ's detailed discussion of Plaintiff's medical record, including her obesity, that he considered all of her impairments in evaluating the extent to which Plaintiff's impairments limited her functioning. That the ALJ did not expressly state that Plaintiff's obesity was not a severe impairment, or did not expressly

state that it had no effect on the RFC determination, does not warrant remand. *See Burch*, 400 F.3d at 682, 684.

Plaintiff also argues that the ALJ should have determined whether her obesity meets the requirements of a listing at step three. (Joint Stip. 6.) The listings describe "for each of the major body systems, [those] impairments which are considered severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If the ALJ determines that a claimant's impairment or combination of impairments meets or medically equals a listed impairment, then the claimant is considered disabled. An ALJ should consider the effects of obesity in determining whether a claimant meets or equals a listed impairment. S.S.R. 02-1P, 2000 WL 628049, at *1 (S.S.A. Sept. 12, 2002).

Plaintiff contends that "the ALJ did not consider the Plaintiff's obesity in combination with her other impairments to determine if she meets the requirements of a separate Listing." (Joint Stip. 6.) Plaintiff does not identify which listing she believes her impairments meet. Instead, she simply describes the impact obesity might have on various body functions. Quoting Social Security Ruling 02-1P, Plaintiff notes that "obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems.... Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected." (Joint Stip. 4.) Plaintiff then states, "These medical facts regarding the cardiovascular and respiratory systems help to explain why, in the present case, Plaintiff is frequently fatigued and in pain." (*Id.*) Fatigue and pain are not a listed impairment. Plaintiff offers no further explanation of how her impairments, including obesity, meet a

8

listed impairment.

In *Burch*, the court noted that the plaintiff bears the burden of proving she has an impairment that meets or equals a listed impairment. 400 F.3d at 683. As in the present case, the plaintiff in *Burch* presented no evidence showing that her obesity met or equaled a listed impairment, nor did she even identify which listing she believed she met or equaled. The court stated, "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* Here, Plaintiff has offered no evidence showing that her obesity, alone or in combination with her other impairments, met or equaled any specific listed impairment. The ALJ did not err by excluding reference to her obesity in evaluating step three.

The ALJ properly considered Plaintiff's obesity in evaluating the five steps of the disability analysis. Plaintiff is not entitled to relief on this claim.

**B.  Whether the ALJ Properly Considered the Mental and Physical Demands of Plaintiff's Past Relevant Work**

The ALJ concluded at step four that Plaintiff was capable of performing her past relevant work as an office helper. In doing so, he relied on the examining physician's opinion and the vocational expert's testimony. (AR 18-19.) Plaintiff argues that the ALJ failed to provide a sufficient rationale for concluding that Plaintiff was capable of performing her past work as an office helper, in that the ALJ's opinion did not include specific findings as to the mental and physical demands of the work itself. (Joint Stip. 13.) Plaintiff also contends that the ALJ's decision at step four was not supported by substantial evidence.

(Joint Stip. 16.) Plaintiff's arguments are not persuasive.

### 1. Plaintiff's Residual Functional Capacity

Before evaluating whether Plaintiff's impairments precluded her from returning to her past relevant work as an office helper, the ALJ was required to ascertain Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 9608p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1527(e)(2).

In the present case, the ALJ considered the medical records, physicians' opinions, hearing testimony, and a lay witness's statement regarding Plaintiff's alleged limitations in determining her RFC, along with Plaintiff's credibility in describing her symptoms and limitations. The ALJ concluded that Plaintiff's statements as to her level of impairment were not entirely credible and that the medical record did not demonstrate an inability to work. (AR 18-19.) The ALJ noted that Plaintiff has not pursued mental health treatment for depression or anxiety, nor has she "received regular medical care despite her complaints of severe pain, depression and other symptoms." (AR 18.) The ALJ stated that Plaintiff appears to have recovered from breast cancer after treatment, with no evidence of recurrence, and that the condition

would not be expected to last for at least twelve consecutive months. The ALJ also noted that although Plaintiff claims she has difficulty with her memory and concentration, she still managed to take care of herself and provide in-home health care for her roommate. (*Id.*) The ALJ concluded that Plaintiff failed to show her impairments "have caused, or can be expected to cause, the level of symptomology, pain and functional restriction which she alleges renders her disabled." (*Id.*) Plaintiff does not challenge the ALJ's credibility determination.

The ALJ adopted the examining physician's opinion that Plaintiff had the RFC to perform light work with no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extreme heat or cold or hazards; with moderate limitations in understanding and remembering detailed instructions and in carrying out detailed instructions. (AR 14.) This determination is supported by substantial evidence in the record.

### 2. Plaintiff's Past Relevant Work

Plaintiff's past relevant work experience is a purchasing assistant/office helper. The Dictionary of Occupational Titles ("DOT") defines "purchasing assistant" as follows:

> Compiles information and records to prepare purchase orders for procurement of material for industrial firm, governmental agency, or other establishment. Verifies nomenclature and specifications of purchase requests. Searches inventory records or warehouse to determine if material on hand is in sufficient quantity. Consults catalogs and interviews suppliers to obtain prices and specifications. Types or writes invitation-of-bid forms and mails forms to supplier firms or for public posting. Writes or types purchase order and sends

>     copy to supplier and department originating request. Compiles
>     records of items purchased or transferred between departments,
>     prices, deliveries, and inventories. Computes total cost of
>     items purchased, using calculator. Confers with suppliers
>     concerning late deliveries. May compare prices,
>     specifications, and delivery dates and award contract to
>     bidders or place orders with suppliers or mail order firms.
>     May verify bills from suppliers with bids and purchase orders
>     and approve bills for payment. May classify priority
>     regulations.

DICOT 249.367-066.

The vocational expert, relying on the DOT definition of purchasing assistant, testified at the hearing that a person with Plaintiff's background, RFC, and additional limitations as described by the ALJ would be able to work as a purchasing assistant. The vocational expert explained that the position was sedentary and semi-skilled. (AR 472.) Plaintiff then clarified that her actual position, though titled purchasing assistant, consisted of being an office helper, which meant she answered phones, did filing, and did some research. (*Id.*) She testified that the woman she worked for would not permit her to learn the position during the three or four months that she worked there. (*Id.*) The vocational expert noted that office assistant is an unskilled position. (AR 473.)

The ALJ accepted the vocational expert's opinion and determined that Plaintiff would be able to perform her past relevant work as she described it at the hearing. (AR 19.) He stated:

>     The vocational expert testified that claimant's past relevant
>     work was performed as that of an office helper, sedentary,

1 unskilled work, based upon her description of this job at the
2 hearing. In comparing the claimant's residual functional
3 capacity with the physical and mental demands of this work,
4 the undersigned finds that the claimant is able to perform it
5 as actually performed as the vocational expert testified.
6 (AR 19.)

7 Plaintiff contends that the ALJ should have been more specific in
8 his analysis of the interaction between Plaintiff's RFC and her past
9 relevant work. (Joint Stip. 14.) In assessing a claimant's ability to
10 perform past relevant work, an ALJ may consider the physical and mental
11 demands of the job either as actually performed or as usually performed
12 in the general economy. SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982)
13 ("The RFC to meet the physical and mental demands of jobs a claimant has
14 performed in the past (either the specific job a claimant performed or
15 the same kind of work as it is customarily performed throughout the
16 economy) is generally a sufficient basis for a finding of 'not
17 disabled.'"). "The claimant is the primary source for vocational
18 documentation, and statements by the claimant regarding past work are
19 generally sufficient for determining the skill level; exertional demands
20 and nonexertional demands of such work. *Id.* The ALJ was entitled to rely
21 on Plaintiff's description of her past relevant work as actually
22 performed in determining whether she could still perform such work.

23 Plaintiff argues that the ALJ failed to provide a logical, orderly
24 rationale for concluding that Plaintiff could perform her past relevant
25 work. Relying on Social Security Ruling 82-62, Plaintiff contends that
26 the ALJ needed (and failed) to make a finding of fact as to her RFC, a
27 finding of fact as to the physical demands of the past work, and a
28 finding of fact that her RFC would permit a return to this work. (Joint

Stip. 14.) However, the ALJ made all of these findings: he made a finding of fact as to Plaintiff's RFC, as described above, he adopted the physical and mental demands of Plaintiff's past relevant work as she described it, and he specifically stated that "comparing the claimant's residual functional capacity with the physical and mental demands of this work," Plaintiff could still perform that job. (AR 19.) In making these findings, the ALJ relied on the vocational expert's testimony that Plaintiff could perform her past relevant work. The ALJ was entitled to rely on the vocational expert's opinion in reaching the disability determination. *See* 20 C.F.R. § 416.960(b)(2) (ALJ may rely on a vocational expert's "expertise and knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed"). The ALJ applied the correct legal standard and his decision is supported by substantial evidence in the record.

**C.   Whether the ALJ Posed a Complete Hypothetical to the Vocational Expert**

Plaintiff argues that the ALJ failed to pose a complete hypothetical to the vocational expert because he did not include Plaintiff's obesity as a limitation. (Joint Stip. 18.) A hypothetical posed to a vocational expert must contain all the limitations of a particular claimant. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)(citations omitted). However, the ALJ need only include in the hypothetical those limitations that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Having determined that Plaintiff's obesity was not a significant limitation to her functioning, the ALJ appropriately omitted reference to her obesity in posing the hypothetical to the vocational

expert. Plaintiff is not entitled to relief on this claim.

**D.    Whether the ALJ Properly Considered the Lay Witness Testimony**

Plaintiff contends that the ALJ failed to incorporate a function report submitted by Plaintiff's roommate, in which he offered his observations of her limitations. (Joint Stip. 19; AR 79-86.) The ALJ summarized Woods' statement as follows:

> Oliver Woods, claimant's friend, completed a functional report on February 3, 2006[]. He reported that claimant dressed him, made his meals, watered and fed the dogs, washing laundry, watered plants, took him to appointments and gave him his medications, monitored his blood level and bathed him. Mr. Woods noted that claimant's personal care had decreased compared to before her illness. He stated that she was a grouch and tired and hurt all the time. He reported that claimant's pain level was very high and that her joints and muscles were stiff and painful.

(AR 16.) Plaintiff contends that the ALJ erred because he "merely summarized the testimony and failed to explain whether [he] accepted or rejected the lay witness testimony." (Joint Stip. 20.)

A lay witness can provide testimony about a plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

The record demonstrates that the ALJ did consider and give proper weight to the evidence from Plaintiff's roommate. The ALJ specifically cited the function report, noting that despite the statements of constant pain and significant limitations, Plaintiff managed to take care of herself, her roommate, the house, and the pets. (AR 18.) The ALJ concluded that the report indicated that Plaintiff "was fully functional in terms of her physical abilities." (*Id.*) The ALJ's conclusion is supported by the report and substantial evidence in the record. Plaintiff is not entitled to relief on this claim.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED.**

DATED: August 17, 2009

```
                              _____
                              MARC L. GOLDMAN
                              United States Magistrate Judge
```